UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------
RYAN O'DELL,

       Plaintiff,

v.

SEAGEN INC., FELIX BAKER, PH.D.,
DAVID R. EPSTEIN, DAVID GRYSKA,
TED LOVE, M.D., JOHN ORWIN, ALPNA
SETH, PH.D., NANCY SIMONIAN, M.D.,
SANDRA M. SWAIN, M.D., and DANIEL
WELCH,

       Defendants.
---------------------------------------------------------

Civil Action No. 23-cv-3254

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Seagen Inc. ("Seagen or the "Company") and the members Seagen's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Seagen by affiliates of Pfizer Inc. ("Pfizer").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 14, 2023 with the United States Securities and

a
b

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Aris Merger Sub, Inc. ("Merger Sub"), an entity formed by Pfizer, will merge with and into Seagen, with Seagen surviving the merger as a wholly-owned subsidiary of Pfizer (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 12, 2023 (the "Merger Agreement"), each Seagen stockholder will receive $229.00 in cash (the "Merger Consideration") for each Seagen share owned.

3. As discussed below, Defendants have asked Seagen's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Centerview Partners LLC ("Centerview") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Seagen's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Aris Merger Sub, Inc. ("Merger Sub"), an entity formed by Pfizer, will merge with and into Seagen, with Seagen surviving the merger as a wholly-owned subsidiary of Pfizer (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 12, 2023 (the "Merger Agreement"), each Seagen stockholder will receive $229.00 in cash (the "Merger Consideration") for each Seagen share owned.

3. As discussed below, Defendants have asked Seagen's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Centerview Partners LLC ("Centerview") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Seagen's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Seagen stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Felix Baker, Ph.D. ("Baker") has served as a member of the Board since July 2003 and is the Chairman of the Board.

11. Individual Defendant David R. Epstein has served as a member of the Board since 2022 and is the Company's Chief Executive Officer.

12. Individual Defendant David Gryska has served as a member of the Board since March 2005.

13. Individual Defendant Ted Love, M.D. has served as a member of the Board since August 2020.

14. Individual Defendant John Orwin has served as a member of the Board since January 2014.

15. Individual Defendant Alpna Seth, Ph.D. has served as a member of the Board since March 2018.

16. Individual Defendant Nancy Simonian, M.D. has served as a member of the Board since March 2012.

17. Individual Defendant Sandra M. Swain, M.D. has served as a member of the Board since November 2022.

18. Individual Defendant Daniel Welch has served as a member of the Board since June 2007.

19. Defendant Seagen is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 21823 30th Drive SE, Bothell, Washington 98021. The Company's stock trades on the NASDAQ Global Select Market under the symbol "SGEN."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

22. Seagen, a biotechnology company, develops and commercializes therapies for the treatment of cancer in the United States and internationally. It offers ADCETRIS, an antibody-drug conjugate (ADC) for the treatment of patients with Hodgkin lymphoma or CD30-positive T-cell lymphomas; PADCEV, an ADC targeting Nectin-4 for the treatment of adult patients with advanced or metastatic urothelial cancer; and TUKYSA, an oral small molecule tyrosine kinase inhibitor for the treatment of adult patients with advanced unresectable or metastatic HER2-positive breast cancer. The Company also develops TIVDAK for metastatic cervical cancer and

other solid tumors; Ladiratuzumab Vedotin, an ADC targeting LIV-1 for metastatic breast cancer and solid tumors; Disitamab Vedotin, a novel HER2-targeted ADC; and SEA-TGT and SEA-CD70 for various cancer diseases. It has collaboration agreements with Takeda Pharmaceutical Company Limited; Agensys, Inc.; Genmab A/S; Merck; and RemeGen, Co. Ltd. The Company was formerly known as Seattle Genetics, Inc. and changed its name to Seagen Inc. in October 2020. Seagen was incorporated in 1997 and is headquartered in Bothell, Washington.

23. On March 13, 2023, the Company announced the Proposed Transaction:

> NEW YORK & BOTHELL, Wash.--(BUSINESS WIRE)-- Pfizer Inc. (NYSE: PFE) and Seagen Inc. (Nasdaq: SGEN) today announced that they have entered into a definitive merger agreement under which Pfizer will acquire Seagen, a global biotechnology company that discovers, develops and commercializes transformative cancer medicines, for $229 in cash per Seagen share for a total enterprise value of $43 billion. The Boards of Directors of both companies have unanimously approved the transaction.
>
> "Pfizer is deploying its financial resources to advance the battle against cancer, a leading cause of death worldwide with a significant impact on public health," said Dr. Albert Bourla, Pfizer Chairman and Chief Executive Officer. "Together, Pfizer and Seagen seek to accelerate the next generation of cancer breakthroughs and bring new solutions to patients by combining the power of Seagen's antibody-drug conjugate (ADC) technology with the scale and strength of Pfizer's capabilities and expertise. Oncology continues to be the largest growth driver in global medicine, and this acquisition will enhance Pfizer's position in this important space and contribute meaningfully to the achievement of Pfizer's near- and long-term financial goals."
>
> Seagen expects to generate approximately $2.2 billion of revenue in 2023, representing 12% year-over-year growth, from its four in-line medicines, royalties and collaboration and license agreements. When combining the expected strong growth trajectories for these medicines with candidates that could emerge from Seagen's pipeline, subject to clinical trial and regulatory success, Pfizer believes Seagen could contribute more than $10 billion in risk-adjusted revenues in 2030, with potential significant growth beyond 2030.

Seagen is a pioneer in ADC technology, with four of the twelve total FDA-approved and marketed ADCs using its technology industry-wide. ADCs are a transformative modality that is emerging as a powerful tool across a broad range of cancers designed to preferentially kill cancer cells and limit off-target toxicities. Seagen has developed a leadership position in ADC technologies since its founding 25 years ago, with groundbreaking and proprietary technology that is positioned for significant growth in 2023 and beyond. Seagen's portfolio includes four approved medicines[2] that are first- or best-in-class in their respective indications across solid tumors and hematologic malignancies, including three ADCs: ADCETRIS® (brentuximab vedotin), PADCEV® (enfortumab vedotin), and TIVDAK® (tisotumab vedotin). The company also commercializes TUKYSA® (tucatinib). Clinical development programs are ongoing for each of these medicines for potential new tumor types or expanded indications in earlier lines of therapy, with catalysts expected annually through 2027.

Seagen is also poised to expand the impact of its therapeutic approach with its broad and deep pipeline that includes eleven new molecular entities, many with the potential to treat large patient populations and all with global commercial rights.[3] The proposed acquisition is also expected to enable for combination potential across both the Seagen and Pfizer pipelines and will leverage Pfizer's protein engineering and medicinal chemistry capabilities to advance Seagen's ADC technology to unlock potential novel target combinations and next-generation biologics.

Seagen is also advancing innovative technologies capable of potentially generating multiple Investigational New Drug Applications (INDs), including next-generation linker/payload technologies for ADCs and other innovative antibody platforms that directly engage the immune system to destroy tumors, such as bi-specific antibodies.

"Pfizer shares our steadfast commitment to patients, and this combination is a testament to the passion, dedication and talent of the Seagen team to achieve our mission to discover, develop, and commercialize transformative cancer medicines that make a meaningful difference in people's lives," said David Epstein, Seagen Chief Executive Officer. "The proposed combination with Pfizer is the right next step for Seagen to further its strategy, and this compelling transaction will deliver significant and immediate value to our stockholders and provide new opportunities for our colleagues as part of a larger science-driven, patient-centric, global company."

Today, Pfizer Oncology has an industry-leading portfolio of 24 approved innovative cancer medicines that generated $12.1 billion in 2022 revenues, including the best-selling therapies for metastatic breast cancer and prostate cancer. Pfizer's in-line portfolio is focused on four broad, key areas: breast cancer, genitourinary cancer, hematology and precision medicine, complemented by an extensive pipeline of 33 programs in clinical development. The proposed combination with Seagen would double Pfizer's early-stage oncology clinical pipeline.

"Over the past decade we've taken bold new approaches to translating scientific research into effective medicines for people living with cancer, and we have pioneered several breakthroughs in breast cancer, genitourinary cancer, hematological malignancies and precision medicine," said Chris Boshoff, Chief Development Officer Oncology and Rare Disease, Pfizer. "The addition of Seagen's world-leading ADC technology will position us at the forefront of innovative cancer care, and strongly complements our existing portfolio across both solid tumors and hematologic malignancies. We believe the combination of our teams, and respective areas of strength and global footprints will allow us to realize Seagen's potential and advance even more potential breakthroughs to patients with cancer."

Pfizer expects to finance the transaction substantially through $31 billion of new, long-term debt, and the balance from a combination of short-term financing and existing cash. The transaction is expected to be neutral to slightly accretive to adjusted diluted earnings per share (EPS)[4] in the third to fourth full year post close. Pfizer expects to achieve nearly $1 billion in cost efficiencies in the third full year after the completion of the transaction.

The companies expect to complete the transaction in late 2023 or early 2024, subject to fulfillment of customary closing conditions, including approval of Seagen's stockholders and receipt of required regulatory approvals.

Pfizer's financial advisor for the transaction is Guggenheim Securities, LLC, with Wachtell, Lipton, Rosen & Katz acting as Pfizer's legal advisor. Centerview Partners LLC is serving as Seagen's financial advisor and provided a fairness opinion to Seagen's Board of Directors with Sullivan & Cromwell LLP serving as its legal advisor. MTS Health Partners also provided financial advice to Seagen.

\* \* \*

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Seagen's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.   **The Materially Incomplete and Misleading Proxy Statement**

25. On April 14, 2023, Seagen filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by Seagen management and relied upon Centerview in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board Centerview with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Seagen management provided to the Board and

Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBIT and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the

residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31. With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each company selected by Centerview for the analysis; (ii) the basis for selecting the reference range of EV/2026E Revenue Multiples of 4.5x to 5.5x; and (iii) the number of fully diluted outstanding shares of Seagen common stock.

32. With respect to Centerview's *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each transaction selected by Centerview for the analysis; (ii) the basis for selecting the reference range of Three-Year Forward Revenue Multiples of 5.0x to 9.5x; and (iii) the number of fully diluted outstanding shares of Seagen common stock.

33. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of implied terminal values for the Company; (ii) the inputs and assumptions underlying the selected range of price-to-earnings multiples of 16x to 20x; (iii) the inputs and assumptions underlying the discount rates ranging from 8.5% to 9.5%; (iv) the weighted

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

cost of capital of the Company; and (v) the number of shares of Company stock outstanding on a fully diluted basis.

34. With respect to Centerview's *Precedent Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the premia paid in the selected transactions; (ii) the closing price of the target company's common stock for the date one day prior to the date on which the trading price of the target's common stock was perceived by Centerview to be affected by a potential transaction; and (iii) the basis for selecting the representative range of premia of 40% to 60%.

35. With respect to the engagement of MTS Health Partners, L.P. ("MTS") as one of the Company's financial advisors in connection with the Proposed Transaction, the Proxy Statement fails to disclose whether MTS was engaged by the Company or Pfizer to provide financial advisory or other services to the Company, and with respect to MTS's services as a financial advisor in connection with the Proposed Transaction, the aggregate fee that was agreed to be paid, if any, to MTS.

36. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were

negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Seagen within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Seagen, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Seagen, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Seagen, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 19, 2023                                    **MELWANI & CHAN LLP**

                                                          By:  */s/ Gloria Kui Melwani*
                                                               Gloria Kui Melwani (GM5661)

15

1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*